Elkins *v.* Camden and Atlantic Railroad Co.

WILLIAM L. ELKINS

*v.*

THE CAMDEN AND ATLANTIC RAILROAD COMPANY et al.

1. A contract between two connecting railroads for the division of earnings, according to the distance which each corporation shall have carried the passenger or freight for which the money is paid, is within the discretionary powers of the directors, and its execution cannot be enjoined at the instance of a stockholder, who does not show a dishonest or fraudulent purpose on the part of the directors in making such contract, and that he will be injured thereby.

2. A stockholder applied for an injunction to prevent the execution of a contract between connecting railroads, for the division of earnings on freight and passengers carried over such roads, making only the company of which he was a stockholder, a defendant.—*Held,* that the other railroad company with which the proposed contract was to be executed, was a necessary party.

On application for an injunction. Heard on bill and affidavits and answer and affidavits and order to show cause.

*Mr. David J. Pancoast* and *Mr. Samuel H. Grey,* for complainant.

*Mr. Peter L. Voorhees* and *Mr. Benjamin Williamson* for defendants.

VAN FLEET, V. C.

This is one of a series of suits brought by the complainant against the same defendants for the purpose of securing, as the complainant alleges, protection against the wrongful and fraudulent acts of the defendants. The complainant is the owner of a majority of the capital stock of the Camden and Atlantic Railroad Company, and he seeks by this suit to restrain the directors of that corporation from entering into a contract with

16

the Philadelphia, Marlton and Medford Railroad Company for the transportation of passengers and freight, also from executing a similar contract with the New Jersey Southern Railroad Company, and also from making sale of eight hundred shares of the capital stock of the Philadelphia, Marlton and Medford Railroad Company, the property of the defendant corporation. The complainant charges that since he obtained a majority of the stock of the Camden and Atlantic Railroad Company, the directors of that corporation have manifested a hostile feeling towards him, and evinced a determination to maintain their power and control over the affairs of the corporation, in opposition to his views and interests, and in proof of this he cites several instances of alleged misconduct on their part, which it is unnecessary to consider, except as they may tend to show the motives which may influence the directors in doing the acts he seeks to have enjoined.

All the acts sought to be enjoined are, in my judgment, clearly within the powers committed to the directors of the defendant corporation, and therefore, unless the complainant has clearly demonstrated that in doing them they will be controlled by a fraudulent or dishonest purpose, and that injury will result to him, it is clear he has no case. The defendants were created a body corporate and given power to construct and operate a railroad. Under the power thus conferred they have implied authority not only to make such contracts as are necessary to the accomplishment of the purposes for which they were created, but also such as may tend to promote and foster their main enterprise. The courts will, as a general rule, presume that contracts made by a railroad corporation, which appear to be designed to promote its legitimate and profitable operation, are within the limits of the powers, and if their validity be assailed, will require the assailant to assume the burden of demonstrating that fact. *Pierce on Railroads 500.*

The bill shows that the road constructed by the Philadelphia, Marlton and Medford Railroad Company intersects the road of the defendants at Haddonfield, in the county of Camden, and is a valuable tributary of the defendants' road. It then charges,

on information and belief, that the president of the defendant corporation, who is also the president of the Philadelphia, Marlton and Medford Railroad Company, intends to enter into a contract with the last-named corporation, for the transportation of passengers and freight over the defendants' road for a long term of years, on terms most favorable to the Philadelphia, Marlton and Medford Railroad Company, and prejudicial to the rights and interests of the defendant corporation. But how, why or in what particular respects the contract is unjustly liberal to the one corporation and prejudicial to the other, is not shown. The answer is quite as meagre in its facts. It simply denies, in general terms, any intent on the part of the defendants to enter into a contract of the character or for the purposes stated in the bill.

The bill shows that the road of the New Jersey Southern Railroad Company connects with the road of the defendants, and affords the defendants' road its only communication, by rail, with the city of New York and intermediate points. It then says that heretofore the defendants have had their passengers and freight, for points beyond the eastern terminus of their own road, carried over the road of the New Jersey Southern Railroad Company, under contracts continuing in force only one year, but that the defendants have recently agreed with the New Jersey Southern Railroad Company, on the terms of a contract, for the same service, running for a period of ten years, the terms of which are most favorable to the latter company, and that a contract embodying such terms is in course of preparation, and, unless enjoined, will be executed. The defendants, by their answer, admit that they have entered into negotiations with the New Jersey Southern Railroad Company, looking to the conclusion and execution of a contract by which each of the two corporations will become bound to carry the passengers and freight of the other, for points beyond their own lines, over its line; that the contract is in course of preparation, and will provide that the fares and tolls received for such service shall be divided according to mileage, or the distance each shall carry such passengers and freight over their respective lines. The answer is silent as to the period the contract is to run.

There can be no doubt that the question as to the expediency of making a contract which is within the capacity of the corporation, is committed to the judgment of the managers of the corporation, by whom alone it can act, and so long as they keep within the power committed to the corporation, and act in good faith, with honest motives and for honest ends, their acts are valid, though the result may show that what they did was unwise or inexpedient. Neither do I think it can be doubted that contracts of the kind sought to be interdicted in this case can lawfully be made by railroad corporations owning and operating connected lines, and, if free from fraud, must be upheld by the courts.

The validity of such contracts has, as I interpret the authorities, been maintained by this court, and also by the court of errors and appeals. *Sussex Railroad Co.* v. *Morris and Essex Railroad Co., 4 C. E. Gr. 13 ; S. C. on appeal, 5 C. E. Gr. 542.*

It is true the judgment pronounced by Chancellor Zabriskie in the case last cited was reversed by the court of errors and appeals, but not on the ground that his views respecting the power of railroad corporations operating connected lines, to make such contracts, were erroneous, but because by the construction he adopted he extended the contract sought to be enforced in that case, to a railroad not in existence at the time the contract was made, and to construct which no legislative authority had been granted. Mr. Justice Bedle, in delivering the opinion of the court of errors and appeals, says that the question then before the court was not one analagous to that which would be presented had two railroad corporations made a contract to carry passengers and freight for each other for a share of the joint fares and tolls received; for in such case, in his judgment, the contract would be valid for the reason that each would have contracted concerning its own authorized business, and such a contract could not be held to be *ultra vires.*

Chancellor Zabriskie had previously said, in the same case, in the court below, that it had for years been the constant practice of railway companies in this country to run in connection, passing freight and passengers over a number of lines forming one

route, and to divide the receipts by an arbitrary schedule fixed upon, and not always, or in most cases, giving to each the share earned on it. He further said that he had no doubt that the contracts by which such connections were formed were valid and effectual in law, and that it was competent for the parties to make them for any period of time not in excess of the duration of their charters.

But the contracts under consideration are not assailed on the ground of want of power to make them, but for fraud. That is a charge which the party making it is always required to establish by convincing facts. And what are the facts here? The complainant charges that the directors are hostile to him, and determined to thwart him in his efforts to prevent their reelection. A simple glance at the position of the parties towards each other can leave little doubt of the truth of this charge. But what of it? Hostility and opposition are not sufficient, standing alone, to prove fraud. Before the court can interdict the making or execution of these contracts, it must be convinced that the directors intend to make them for a fraudulent purpose or in furtherance of a fraudulent scheme, and that the fraud will injuriously affect the complainant. The directors have a right to make the contracts, and can only be prevented from exercising their right in that respect because they intend to exercise it fraudulently to the prejudice of the complainant., But it is said that the directors mean to have the contracts under consideration embrace a much longer period of time than their previous contracts for the same service covered, but they have a right to make contracts of this kind for any period of time they may think expedient. Besides, it may be that the other contracting party may have insisted, in view of the strife existing among the stockholders of the Camden and Atlantic Railroad Company, that if a new contract was entered into, it must be for such period of time as would afford them adequate protection against the injurious consequences possible to result from the strife. Cautious and judicious persons, in view of the actual state of affairs, would have been very likely to have insisted upon some such protection.

But there is a more certain test by which the complainant's

right to an injunction may be tried.  Will he be harmed if these contracts are made ?   As a general rule the contract itself, in this class of cases, furnishes the best test whether it is made for an honest or dishonest purpose.  If it is unequal, giving much and getting little, or displays a liberality which throws around the transaction the appearance of a gift rather than a bargain made at arm's length, it may well be believed some other motive than the advancement or protection of the interests of the stockholders caused its negotiation.  But here, so far as the terms of the contracts are before the court, they appear to be not only unobjectionable but eminently fair.  The one that provides for a division of earnings, according to the distance which each corporation shall have carried the person or thing for which the money is paid, certainly presents as just a method of division as can be devised.  It gives each its own and requires neither to pay tribute to the other for the advantage of the connection.

On the case as it now stands, it is clear that the complainant is not entitled to an injunction on this branch of the case.

The complainant makes an additional claim.  He says that the sale of the eight hundred shares of the stock of the Philadelphia, Marlton and Medford Railroad Company should be enjoined, because the directors intend, as he says he is informed and believes, to sell them for less than their fair value, and that their object in doing so is, first, to deprive the Camden and Atlantic Railroad Company of its proper influence in the management of the affairs of the Philadelphia, Marlton and Medford Railroad Company, and second, to depreciate the property of the Camden and Atlantic Railroad Company.  The defendants deny these charges, and show that the stock was obtained, not by subscription, but in exchange for iron rails which the Camden and Atlantic Railroad Company had ceased to use, and the directors say, believing that the interests of the corporation would be best promoted by a sale of the stock, they directed their president to sell it, at such price as should be shown to be its market value, by a public sale of a part of it.  The fraud charged against the defendants on this part of the case is denied

in such manner as to deprive the complainant of all right to interference by the court.

The injunction asked must be denied, and the order to show cause discharged.

I am quite decidedly of opinion, if a contrary conclusion had been reached on the main case, it would still have been the duty of the court to have refused the injunction asked. The Philadelphia, Marlton and Medford Railroad Company and the New Jersey Southern Railroad Company are not parties to this suit. They are unquestionably necessary parties. The contract with the New Jersey Southern Railroad Company must have been completed and concluded, as both the bill and answer agree that it was in course of preparation for the signatures of the parties. It is impossible for me to see how it could have been in course of preparation, unless the terms of it had been settled and agreed upon by the contracting parties. If it was completed up to the point of execution, it is easy to see that equities might exist in favor of the omitted party, which would entitle such party to the formal execution of the contract, even against the complainant, though, on the case as it stands between the complainant and the defendants, the complainant might be entitled to the aid he asks. The indispensable qualities of every valid judicial sentence are, that the court pronouncing the sentence shall have jurisdiction of the parties and of the subject-matter adjudged, and that the sentence shall, in substance and effect, be within the issue made by the pleadings. It is an obvious dictate of reason and justice that a court shall not determine the rights of a party not before it, and who has had no opportunity to be heard in defence of them. The granting of an injunction in this case might, at least temporarily, deprive the omitted party of highly valuable and important rights.

The rule upon this subject is settled. Chief-Justice Beasley, in pronouncing the judgment of the court of errors and appeals in *Morgan v. Rose, 7 C. E. Gr. 592,* said : "The non-joinder of an essential party does not necessarily lead to the dissolution of an injunction ; the general rule is that it will have that effect, but such rule is not universal. * * * I think the true prin-

ciple is, that when the injunction will have the effect of injuring, in any material respect, the rights of absent persons, the court will not, unless in case of special necessity, interfere with such rights, but that when the absence of persons as parties constitutes, so far as the granting or refusing of the injunction is concerned, a formal rather than a substantial defect, there is no ground, arising from such fact, for a refusal of the temporary aid of the court, if such aid appears, under the circumstances, to be equitable."

The application of this rule to the case in hand is apparent.